# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

### VENUE: SAN FRANCISCO

**FILED**

APR 28 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

V.

**CR 15 234 CRB**

ARA KARAPEDYAN, et al. (see attached)

DEFENDANT(S).

# INDICTMENT

VIOLATIONS:  Title 18, United States Code, Section 1962(d) – Racketeering Conspiracy; Title 18, United States Code, Section 1028(f) – Conspiracy to Commit Identity Theft; Title 18, United States Code, Section 1029(b)(2) – Conspiracy to Commit Access Device Fraud; Title 18, United States Code, Section 1349 – Conspiracy to Commit Mail, Wire, and Bank Fraud; Title 18, United States Code, Section 1956(h) –Conspiracy to Commit Money Laundering; Title 18, United States Code, Section 1958 – Conspiracy to Use Interstate Facility to Commit Murder-For-Hire; Title 18, United States Code, Section 371 – Conspiracy to Engage in the Unlicensed Wholesale Distribution of Drugs; Title 18, United States Code, Sections 1963, 982(a)(1), and 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) – Forfeiture

A true bill.

_____ Foreman

Filed in open court this _28th_ day of

_April 2015_.

Stephen Ybarra _____ Clerk

Bail, $ _no bail_ arrest + warrant (all defendants)

# Attachment to Grand Jury True Bill

UNITED STATES OF AMERICA,

    Plaintiff,

      v.

(1)  ARA KARAPEDYAN,
(2)  MIHRAN STEPANYAN,
(3)  ARTUR STEPANYAN,
(4)  GEVORK TER-MKRTCHYAN,
(5)  KHACHIG GEUYDIJIAN,
(6)  ARMAN PETROYSAN,
(7)  LANNA KARAPEDYAN,
(8)  MAXWELL STARSKY,
(9)  SEVAK GHARGHANI,
(10) JEAN DUKMAJIAN,
(11) KARINE DUKMAJIAN,
(12) ANGELA DUKMAJIAN,
(13) ARMAN DANIELIAN,
(14) ASATOUR MAGZANYAN,
(15) TIGRAN SARKISYAN,
(16) HRIPSIME KHACHTRYAN,
(17) LOUI ARTIN,
(18) HUGO MARQUEZ,
(19) ARMAN ZARGARYAN,
(20) DMITRIY KUSTOV,
(21) MICHAEL INMAN,
(22) ARAXIA NAZARYIAN,
(23) ALEXANDER SOLIMAN,
(24) CHERYL BARNDT,
(25) ERIC FIGUEROA,
(26) MARC ASHEGHIAN,
(27) MICHAEL ASHEGHIAN,
(28) DAVID MILLER,
(29) JAMES RUSSO,
(30) JEANNETTE COUCH,
(31) MARIE POLICHETTI,
(32) BERNARDO GUILLEN, and
(33) JAVIER RAMIREZ,

    Defendants.

1  MELINDA HAAG (CABN 132612)
   United States Attorney

2

3

4



5

6

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA        )   CR  15  234
                                    )   No.
12          v.                      )
                                    )
13  (1)   ARA KARAPEDYAN,           )   VIOLATIONS:  Title 18, United States Code, Section
14  (2)   MIHRAN STEPANYAN,         )   1962(d) – Racketeering Conspiracy; Title 18, United
    (3)   ARTUR STEPANYAN,          )   States Code, Section 1028(f) – Conspiracy to Commit
                                    )   Identity Theft; Title 18, United States Code,
15  (4)   GEVORK TER-MKRTCHYAN,     )   Section 1029(b)(2) – Conspiracy to Commit Access
    (5)   KHACHIG GEUYDJIAN,        )   Device Fraud; Title 18, United States Code,
16  (6)   ARMAN PETROSYAN,          )   Section 1349 – Conspiracy to Commit Mail, Wire, and
    (7)   LANNA KARAPEDYAN,         )   Bank Fraud; Title 18, United States Code,
17  (8)   MAXWELL STARSKY,          )   Section 1956(h) – Conspiracy to Commit Money
    (9)   SEVAK GHARGHANI,          )   Laundering; Title 18, United States Code,
18  (10)  JEAN DUKMAJIAN,           )   Section 1958 – Conspiracy to Use Interstate Facility to
    (11)  KARINE DUKMAJIAN,         )   Commit Murder-For-Hire; Title 18, United States
19  (12)  ANGELA DUKMAJIAN,         )   Code, Section 371 – Conspiracy to Engage in the
    (13)  ARMAN DANIELIAN,          )   Unlicensed Wholesale Distribution of Drugs; Title 18,
20  (14)  ASATOUR MAGZANYAN,        )   United States Code, Sections 981(a)(1)(A) & (C),
    (15)  TIGRAN SARKISYAN,         )   982(a)(1) & (7), 1028(b), 1029(c), 1963; Title 21,
21                                  )   United States Code, Section 853; and Title 28, United
    (16)  HRIPSIME KHACHTRYAN,      )   States Code, Section 2461(c) – Forfeiture
22  (17)  LOUI ARTIN,               )
    (18)  HUGO MARQUEZ,             )
23  (19)  ARMAN ZARGARYAN,          )   SAN FRANCISCO VENUE
    (20)  DMITRIY KUSTOV,           )
24                                  )
    (21)  MICHAEL INMAN,            )   UNDER SEAL
25  (22)  ARAXIA NAZARYIAN,         )
    (23)  ALEXANDER SOLIMAN,        )
26  (24)  CHERYL BARNDT,            )
    (25)  ERIC FIGUEROA,            )
27  (26)  MARC ASHEGHIAN,           )

28

(27)  MICHAEL ASHEGHIAN,                    )
(28)  DAVID MILLER,                          )
(29)  JAMES RUSSO,                           )
(30)  JEANNETTE COUCH,                       )
(31)  MARIE POLICHETTI,                      )
(32)  BERNARDO GUILLEN, and                  )
(33)  JAVIER RAMIREZ,                        )
                                            )
            Defendants.                      )
_____)

# I N D I C T M E N T

The Grand Jury charges:

## Introductory Allegations

At all times relevant to this Indictment:

1.      Defendant ARA KARAPEDYAN was a businessman in Northridge, California.  He owned and operated a pizza restaurant, called Old Sicily, in North Hollywood, California.

2.      Defendant MIHRAN STEPANYAN was a businessman in Glendale, California.  He owned and operated a California-licensed drug wholesale company, Niva Pharmaceuticals, in North Hollywood, California, although he reported to a California state pharmacy inspector in 2014 that Niva Pharmaceuticals was not engaged in wholesale drug distribution.  Defendant ARTUR STEPANYAN was a cousin of defendant MIHRAN STEPANAYAN and lived in Glendale, California.  MIHRAN STEPANAYAN and ARTUR STEPANYAN created and controlled a variety of business entities, including: Panda Capital Group, Red Rock Capital, Trans Atlantic Capital, GC National Wholesale, Sky Atlantic Capital, and Nationwide Payment Solutions.

3.      Defendant LANNA KARAPEDYAN was ARA KARAPEDYAN's daughter.  Defendant ARMAN PETROSYAN was LANNA KARAPEDYAN's husband and ARA KARAPEDYAN's son-in-law.

4.      Defendants GEVORK TER-MKRTCHYAN, KHACHIG GEUYDJIAN, MAXWELL STARSKY, SEVAK GHARGHANI, and JEAN DUKMAJIAN were associates of ARA KARAPEDYAN.  TER-MKRTCHYAN operated a non-profit medical clinic called All Care One Community Health.  Defendant GEUYDJIAN operated an unlicensed private mail box business called

1   Mailworks, Etc., in Chatsworth, California.  GEUYDJIAN also created and controlled other business

2   entities, including: Legal-Act Entities; All American Real Estate Company; and Pro Serve Entities, Inc.

3   STARSKY lived in Studio City, California, and was an associate of ARA KARAPEDYAN.

4   GHARGHANI worked at ARA KARAPEDYAN's pizza restaurant.  JEAN DUKMAJIAN and operated

5   a check cashing business called Duke's Check Cashing in North Hollywood, California.

6       5.      Defendants KARINE DUKMAJIAN and ANGELA DUKMAJIAN were daughters of

7   defendant JEAN DUKMAJIAN, and both worked at Duke's Check Cashing.  ANGELA DUKMAJIAN

8   was Duke's Check Cashing's anti-money laundering and compliance officer and was responsible for

9   verifying that transactions conducted at Duke's Check Cashing met all legal requirements.

10      6.      Defendants ARMAN DANIELIAN, ASATOUR MAGZANYAN, and LOUI ARTIN

11  were associates of ARA KARAPEDYAN.  DANIELIAN lived in Burbank, California, and created drug

12  wholesale companies, including Nuvo Pharmaceuticals and Niva Pharmaceuticals, by preparing and

13  filing the necessary paperwork.  Defendants TIGRAN SARKISYAN and HRIPSIME KHACHTRYAN

14  were husband and wife and lived in North Hollywood, California.  Both were associates of MAXWELL

15  STARSKY.

16      7.      Defendant HUGO MARQUEZ lived in Encino, California, and was involved in the

17  operation of several drug wholesale drug companies, including: Apex Pharmaceuticals, which was

18  licensed in California until in or about November 2011; Maroon Pharma, which was licensed in New

19  York; and ME Wholesale, which was licensed in Pennsylvania.   Defendant ERIC FIGUEROA was a

20  friend and associate of MARQUEZ and helped him procure drugs to sell.  Defendant ARMAN

21  ZARGARYAN was an associate of MARQUEZ who lived in Encino, California.  ZARGARYAN

22  operated a California-licensed drug wholesale company, Nuvo Pharmaceuticals, which had originally

23  been created by ARMAN DANIELIAN.  Defendant DMITRIY KUSTOV was an associate of

24  ZARGARYAN who lived in Los Angeles, California.  Defendant MICHAEL INMAN lived in Beverly

25  Hills, California, and stole checks that were ultimately used to fund a bank account from which

26  ZAGARYAN and KUSTOV tried to withdraw money.  Defendant ARAXIA NAZARYIAN lived in

27  Van Nuys, California, and worked for ZARGARYAN at Nuvo Pharmaceuticals.

28      8.      Defendant ALEXANDER SOLIMAN lived in Valencia, California, and owned and

1   controlled several businesses engaged in the wholesale distribution of drugs, including Apex

2   Pharmaceuticals and Maroon Pharma, which he operated with HUGO MARQUEZ and defendant

3   CHERYL BARNDT. BARNDT worked at Apex Pharmaceuticals and Maroon Pharma buying and

4   selling drugs. Defendants MARC ASHEGHIAN and MICHAEL ASHEGHIAN were brothers who

5   lived, respectively, in Sherman Oaks and Los Angeles, California, and controlled Fox Health Care, a

6   drug wholesaler located and licensed in Utah.

7          9.      Defendant DAVID MILLER lived in Santa Ana, California, and owned, operated, and

8   controlled a variety of drug wholesale businesses, including: Minnesota Independent Cooperative

9   ("MIC") in Eagan, Minnesota, which was licensed to wholesale drugs in Minnesota and had an office in

10  Tustin, California, where it was also called E-Tail Network; B&Y Wholesale, which was licensed to

11  wholesale drugs in Puerto Rico; and FMC Distributors, which was also licensed to wholesale drugs in

12  Puerto Rico. Defendant JAMES RUSSO lived in Minnesota and worked for MIC in Eagan as Vice-

13  President of Operations. Defendants JEANNETTE COUCH and MARIE POLICHETTI worked for

14  MIC in Tustin, California, where COUCH was Head of Purchasing and POLICHETTI was the Office

15  Manager and, among other responsibilities, handled paying debts of the company. BERNARDO

16  GUILLEN and JAVIER RAMIREZ worked for MIC in California, inspecting drugs for MIC and

17  shipping drugs from California to MIC in Minnesota.

18                      Distribution of Improperly Procured Drugs

19         10.     The wholesale distribution of drugs in the United States and its territories is subject to

20  federal and state regulation. Generally speaking, anyone seeking to engage in the distribution of

21  pharmaceuticals must be licensed in the state and territory in which one does business. Licensing is

22  required in order to ensure that drug distributors procure, handle, and store their drugs in a manner that

23  ensures the drugs' effectiveness and safety. In addition, applicable laws and regulations require drug

24  distributors to maintain strict records on the provenance of the drugs they sell. Such drug "pedigrees"

25  must state, at minimum, from whom the distributor purchased the drugs and are intended to allow for the

26  origins of drugs to be readily determined, which is necessary to ensure the effectiveness and safety of

27  the drugs, as well as to facilitate any drug recalls.

28  //

INDICTMENT                                4

11.     Typically, the prices of drugs do not vary greatly.  Drug manufacturers generally set a price, called the Wholesale Acquisition Cost ("WAC"), which is the price they charge to wholesalers and other direct accounts before the application of any rebates, discounts, allowances, and other price concessions.  Given that many drugs are under patent, and thus, subject to monopolistic pricing, there is little deviation from the WAC for non-generic drugs.

12.     Beginning no later than in or about 2009, MIHRAN STEPANYAN and ARTUR STEPANYAN supplied DAVID MILLER and MIC with large amounts of drugs.  Rather than acquire their drugs lawfully from manufacturers and authorized distributors, MIHRAN STEPANYAN and ARTUR STEPANYAN instead procured the drugs they sold from unlicensed sources.  In order to conceal their unlawful conduct and launder the proceeds thereof, MIHRAN STEPANYAN, ARTUR STEPANYAN, and their associates conducted their drug sales through front companies such as Panda Capital Group, Red Rock Capital, Trans Atlantic Capital, GC National Wholesale, Sky Atlantic Capital, and Nationwide Payment Solutions.  They also conducted their transactions using aliases.  For instance, MIHRAN STEPANYAN conducted many of his drug sales using the names "George Cardashian" and "Zohrab Hovhannisyan" instead of his own true name.

13.     DAVID MILLER and his associates were aware that the drugs MIC purchased from MIHRAN STEPANYAN and ARTUR STEPANYAN had not been supplied through proper channels.  MIC employees BERNARD GUILLEN and JAVIER RAMIREZ worked with the STEPANYANs in Southern California to package the drugs and send them from California to MIC in Minnesota via UPS.  In order to conceal the unlawful nature of MIC's purchases, MILLER and his associates, such as JEANNETTE COUCH and MARIE POLICHETTI, created false drug pedigrees and invoices, as well as conducted MIC's drug purchases through front companies such as B&Y Wholesale and FMC Distributors, to make it appear that B&Y Wholesale and FMC Distributors in Puerto Rico were supplying MIC's drugs.  MILLER, JAMES RUSSO, COUCH, and POLICHETTI sent some of these fraudulent documents to customers via e-mail.  They also posted fraudulent pedigree information for their customers to download on the web site www.micoop.com, which was maintained by an Internet Service Provider in the Northern District of California.  From in or about 2009 up through the date of

//

INDICTMENT                                    5

1  this Indictment, MIC purchased more than $157 million worth of drugs from MIHRAN STEPANYAN

2  and ARTUR STEPANYAN.

3      14.    HUGO MARQUEZ and ARMAN ZARGARYAN similarly engaged in the distribution

4  of drugs they procured from unlicensed sources.  ERIC FIGUEROA helped MARQUEZ find drugs

5  from unlicensed sources.  Beginning no later than in or about 2012 and continuing through 2013, they

6  sold in excess of $24 million worth of improperly procured drugs to Apex Pharmaceuticals, Maroon

7  Pharma, and ME Wholesale – which was a business originally created by MIHRAN STEPANYAN and

8  ARTUR STEPANYAN – which then sold the drugs to other customers.

9      15.    Apex Pharmaceuticals and Maroon Pharma were operated by ALEXANDER SOLIMAN

10  and CHERYL BARNDT, who worked with MARQUEZ and were aware that the drugs their businesses

11  purchased had not been supplied through proper channels.  BARNDT, who dealt with customers for

12  Apex Pharmaceuticals and Maroon Pharma, sent e-mails containing false pedigree information to

13  customers.   Generally, these pedigrees falsely claimed that the drugs being sold had been supplied by

14  authorized drug distributers when, in fact, they had not been.  In addition, SOLIMAN and BARNDT

15  caused Maroon Pharma to pay the ASHEGHIANs' drug wholesale company, Fox Health Care, but the

16  ASHEGHIANs transferred much of the money into other bank accounts, including an account controlled

17  by MARQUEZ as well as another account from which much of the money was withdrawn via ATM

18  cash withdrawals and checks negotiated through check cashing businesses.  For ME Wholesale

19  transactions, MARQUEZ also claimed to have been supplied by Nuvo Pharmaceuticals.  Nuvo

20  Pharmaceuticals, however, was a business originally created by ARMAN DANIELIAN and it did not

21  receive drugs from the manufacturers and authorized distributors that it claimed it did.  In addition,

22  Nuvo Pharmaceuticals was controlled and operated by ARMAN ZARGARYAN under the alias "Ara

23  Yeramyan."  From in or about September 2013 to in or about December 2013, ARAXIA NAZARYAN

24  withdrew more than $2 million in Nuvo Pharmaceuticals proceeds from bank accounts maintained under

25  the "Ara Yermamyan" name.

26      16.    ARA KARAPEDYAN likewise engaged in the unlicensed sale of improperly procured

27  drugs.  On at least three occasions in 2013, KARAPEDYAN met with a purchaser in various parking

28  lots in the Eastern District of California and delivered boxes and bottles of drugs such as Abilify,

1  Liboderm, Cymbalta, and Namenda, as well as approximately 360 pills of oxycodone, a controlled

2  substance.  KAPAREDYAN also sold the HIV drugs Atripla, Truvada, and Isentress in or about July

3  2013.  Furthermore, on or about January 8, 2015, SEVAK GHARGHANI, on KARAEPDYAN's behalf,

4  delivered several bottles of the cancer medication Gleevec to a purchaser in the Northern District of

5  California.

6      17.    In addition, ARA KARAPEDYAN and MAXWELL STARSKY, from in or about

7  October 2014 through in or about January 2015, provided ME Wholesale with more than $1 million

8  worth of improperly procured drugs.

9      18.    ARA KARAPEDYAN also supplied MIHRAN STEPANYAN and ARTUR

10  STEPANYAN with drugs in or about 2014.

11                      Negotiation of Fraudulent Checks

12      19.    From at least in or about September 2012, through in or about November 2014, ARA

13  KARAPEDYAN, GEVORK TER-MKRTCHYAN, KHACHIG GEUYDJIAN, ARMAN

14  PETROSYAN, LANNA  KARAPEDYAN, MAXWELL STARSKY, SEVAK GHARGHANI, JEAN

15  DUKMAJIAN, KARINE DUKMAJIAN, ANGELA DUKMAJIAN, ASATOUR MAGZANYAN,

16  TIGRAN SARKISYAN, HRIPSIME KHACHTRYAN, LOUI ARTIN, HUGO MARQUEZ, ARMAN

17  ZARGARYAN, DMITRIY KUSTOV, MICHAEL INMAN, and their associates negotiated and

18  attempted to negotiate in excess of 500 fraudulent checks totaling more than $5 million and issued to a

19  variety of payees.  ARA KARAPEDYAN, PETROSYAN, LANNA KARAPEDYAN, and

20  GHARGHANI delivered, and sent via mail, many of these checks to the Northern District of California

21  to be negotiated.  ARA KARAPEDYAN, PETROSYAN, LANNA KARAPEDYAN, and

22  GHARGHANI also traveled to the Northern District of California to pick up cash derived from the

23  negotiation of these checks.

24      20.    A substantial portion of the fraudulent checks were tax refund checks sent by mail by the

25  United States Treasury, and many of these tax refund checks had been issued based on fraudulent tax

26  returns filed with the Internal Revenue Service.  ASATOUR MAGZANYAN, TIGRAN SARKISYAN,

27  HRIPSIME KHACHTRYAN, and KHACHIG GEUYDJIAN, among others, acquired and possessed

28  identifying information for dozens of individuals, which was used to file fraudulent tax returns online.

GEUYDJIAN also used his mailbox business Mailworks, Etc., as the address of record for many such tax filings and as the address to where tax return checks were to be sent.  Fraudulent tax refund checks, however, were not the only checks from which the defendant sought to profit.  For instance, GEVORK TER-MKRTCHYAN provided checks either issued from a bank account maintained under the name for his non-profit clinic, All Care One Community Health, or issued to All Care One Community Health as the payee.  In addition, MICHAEL INMAN in 2013 stole several high-value cashier's checks from a woman, which ARMAN ZARGARYAN and DMITRIY KUSTOV used to fund a bank account created under the woman's name from which they wrote checks.  Furthermore, in or about March 2014, KHACHIG GEUYDJIAN attempted to negotiate two high-value tax return checks that had simply been stolen from their rightful owners, one of whom was a movie director, the other, the drummer of a popular band.

21.    The negotiation of fraudulent checks was also facilitated by JEAN DUKMAJIAN, KARINE DUKMAJIAN, and ANGELA DUKMAJIAN through their business, Duke's Check Cashing.  The DUKMAJIANs allowed ARA KARAPEDYAN and his associates to negotiate numerous fraudulent checks through Duke's Check Cashing in exchange for a percentage of the proceeds.  ANGELA DUKMAJIAN, Duke's Check Cashing's anti-money laundering and compliance officer, also inaccurately prepared records that were required to be provided to federal authorities in order to conceal their scheme.

Money Laundering

22.    The defendants' drug distribution and check fraud schemes generated substantial amounts of cash, and they sought to launder their illicit proceeds by transferring the money through various bank accounts opened under the names of various businesses and numerous individuals' identities.

23.    For instance, between in or about August 2013 and in or about January 2014, MIHRAN STEPANYAN's drug wholesale company, GC National Wholesale, wired more than $1.3 million to a business to which ARA KARAPEDYAN had access.  KARAPEDYAN caused almost all of these wire transfers to be converted into cash, much of which KARAPEDYAN picked up in the Northern District of California.  Similarly, in September 2014, MIHRAN STEPANYAN asked KARAPEDYAN to launder more money, this time, from another one of STEPANYAN's companies, Nationwide Payment

1  Solutions.  KARAPEDYAN, however, did not end up receiving any money from Nationwide Payment

2  Solutions.  Rather, at least some of the money from Nationwide Payment Solutions was transferred by

3  wire to purchase make millions of dollars of gold by someone known only as "Gary" to the gold seller.

4       24.    Similarly, between in or about October 2014 and in or about February 2015, ME

5  Wholesale wired more than $1 million to another business to which KARAPEDYAN had access.

6  KARADPEYAN caused almost all of these wire transfers to be converted into cash or to be sent as

7  further wire transfers to other bank accounts maintained under such names as "Sevak Gharghani," "LG

8  Construction," "American Eagle Coins," "Starsky Development Group," "Hovik's Billing Service," and

9  "MJ Trade Group."  KARAPEDYAN picked up much of the cash in the Northern District of California,

10  while his associates, such as SEVAK GHARGHANI, MAXWELL STARSKY, and LOUI ARTIN,

11  accessed the money that had been wired into the bank accounts.

12  Murder-For-Hire

13       25.    From in or about August 2014 through in or about November 2014, ARA

14  KARAPEDYAN and GEVORK TER-MKRTCHYAN sought individuals who would be willing to kill

15  someone (the "Victim") who had angered TER-MKRTCHYAN.  During these months,

16  KARAPEDYAN and TER-MKRTCHYAN made numerous calls to the Northern District of California

17  seeking individuals willing to carry out the attack, and they eventually agreed to pay $1,500 for the task.

18  The attack on the Victim was never carried out.

19  COUNT ONE:  (18 U.S.C. § 1962(d) – Racketeering Conspiracy)

20       26.    Paragraphs 1 through 25 of this Indictment are realleged, repeated, and incorporated by

21  reference as though fully set forth herein.

22  The Racketeering Enterprise

23       27.    Defendants ARA KARAPEDYAN, MIHRAN STEPANYAN, ARTUR STEPANYAN,

24  GEVORK TER-MKRTCHYAN, KHACHIG GEUYDJIAN, ARMAN PETROSYAN, LANNA

25  KARAPEDYAN, MAXWELL STARSKY, SEVAK GHARGHANI, JEAN DUKMAJIAN, KARINE

26  DUKMAJIAN, ANGELA DUKMAJIAN, ARMAN DANIELIAN, ASATOUR MAGZANYAN,

27  TIGRAN SARKISYAN, HRIPSIME KHACHTRYAN, LOUI ARTIN, HUGO MARQUEZ, ARMAN

28  ZARGARYAN, DMITRIY KUSTOV, and DAVID MILLER, and the entities owned, operated, and

1   controlled by them, including All Care One Community Health, Legal-Act Entities, Mailworks, Etc., All

2   American Real Estate Company, Pro Serve Entities, Inc., Duke's Check Cashing, LG Construction,

3   American Eagle Coins, Starsky Development Group, Hovik's Billing Service, MJ Trade Group, Niva

4   Pharmaceuticals, Nuvo Pharmaceuticals, Panda Capital Group, Red Rock Capital, Trans Atlantic

5   Capital, GC National Wholesale, Sky Atlantic Capital, Nationwide Payment Solutions, Apex

6   Pharmaceuticals, Maroon Pharma, ME Wholesale, MIC, B&Y Wholesale, and FMC Distributors,

7   together with others known and unknown, comprised the "Karapedyan-Stepanyan Enterprise." The

8   Karapedyan-Stepanyan Enterprise, including its leadership, members, and associates, in the Northern

9   District of California and elsewhere, constituted an "enterprise" as defined in Title 18, United States

10  Code, Section 1961(4), that is, a group of individuals and entities associated in fact.  The enterprise

11  constituted an ongoing organization whose members functioned as a continuing unit for a common

12  purpose of achieving the objectives of the enterprise.  The enterprise engaged in, and its activities

13  affected, interstate and foreign commerce.

14                                      Purposes of the Enterprise

15          28.     The purposes of the Karapedyan-Stepanyan Enterprise included but were not limited to

16  the following:

17                  a.      Obtaining profits and property for its members and associates through the

18  commission of criminal acts, including, but not limited to, identity theft, fraudulent use of access

19  devices, mail, wire, and bank fraud, the unlicensed wholesale distribution of drugs, and money

20  laundering;

21                  b.      Promoting and enhancing the enterprise and the activities of its members and

22  associates;

23                  c.      Providing assistance to other enterprise members and associates in order to

24  hinder, obstruct, and prevent law enforcement officers from identifying the offenders, apprehending the

25  offenders, and successfully prosecuting and punishing the offenders;

26                  d.      Eliminating, through violence and the threat of violence, individuals who opposed

27  or angered enterprise members and associates.

28  //

1

Means and Methods of the Enterprise

2    29.    Among the means and methods by which the members and associates of the Karapedyan-

3 Stepanyan Enterprise conducted and participated in the conduct of the affairs of the enterprise were the

4 following:

5           a.    The members and associates of the Karapedyan-Stepanyan Enterprise used false

6 and stolen identification documents and fraudulent and unauthorized access devices, such as Social

7 Security and bank account numbers, to negotiate fraudulent checks.

8           b.    The members and associates of the Karapedyan-Stepanyan Enterprise used false

9 and stolen identification documents and fraudulent and unauthorized access devices, such as Social

10 Security and Tax Identification numbers, to file fraudulent federal tax returns in order to induce the

11 United States Treasury to issue tax refund checks through the mail.

12          c.    The members and associates of the Karapedyan-Stepanyan Enterprise used false

13 and stolen identification documents to create bank accounts through which they could negotiate

14 fraudulent checks as well as to launder money derived from other criminal activities.

15          d.    The members and associates of the Karapedyan-Stepanyan Enterprise created

16 documents containing false information, such as invoices, contracts, and other business records, in order

17 to facilitate their fraudulent sales of drugs improperly procured and handled, their negotiation of

18 fraudulent checks, and their laundering of the proceeds from these activities.

19          e.    The members and associates of the Karapedyan-Stepanyan Enterprise created

20 shell businesses to engage in the fraudulent sales of drugs improperly procured and handled, to negotiate

21 fraudulent checks, and to launder the proceeds from these activities.

22          f.    The members and associates of the Karapedyan-Stepanyan Enterprise used the

23 mail and wire transmissions to facilitate their fraudulent sales of drugs improperly procured and handled

24 to unwitting customers. For instance, they used mail and e-mail to send false drug pedigree information

25 to customers, they communicated with other conspirators using e-mail, and they posted false pedigree

26 information on a web site for customers to download. They also shipped drugs improperly procured and

27 handled via common carrier to conspirators so that the drugs could be aggregated and repackaged for

28 sale. They also shipped drugs improperly procured and handled to customers who were unaware that

INDICTMENT                                              11

1   the drugs had been procured outside of the proper channels of distribution.  They also used wire

2   transmissions to pay for, and to receive payment for, drugs, as well as used wire transmissions to launder

3   the proceeds derived from the sales of drugs and the negotiation of fraudulent checks.

4       g.  The members and associates of the Karapedyan-Stepanyan Enterprise obtained

5   money and property from banks through misrepresentations.  For instance, they negotiated fraudulent

6   checks and caused fraudulent checks to be negotiated through banks.  They also established bank

7   accounts with false identities, false address, and other false information from which they drew money

8   and through which they laundered the proceeds of their criminal activities.

9       h.  The members and associates of the Karapedyan-Stepanyan Enterprise conducted

10   numerous financial transactions to promote and to conceal the proceeds derived from their fraudulent

11   sales of drugs improperly procured and handled, and their negotiation of fraudulent checks.

12       i.  The members and associates of the Karapedyan-Stepanyan Enterprise used

13   violence and the threat of violence in order to advance their personal interests as well as the interests of

14   the Enterprise.

15   The Racketeering Conspiracy

16      30.  From at least in or about 2009, through and including the date of this Indictment, in the

17   Northern District of California and elsewhere, the defendants,

18   (1) ARA KARAPEDYAN,

19   (2) MIHRAN STEPANYAN,

20   (3) ARTUR STEPANYAN,

21   (4) GEVORK TER-MKRTCHYAN,

22   (5) KHACHIG GEUYDJIAN,

23   (6) ARMAN PETROSYAN,

24   (7) LANNA KARAPEDYAN,

25   (8) MAXWELL STARSKY,

26   (9) SEVAK GHARGHANI,

27   (10) JEAN DUKMAJIAN,

28   (11) KARINE DUKMAJIAN,

1                        (12) ANGELA DUKMAJIAN,

2                        (13) ARMAN DANIELIAN,

3                       (14) ASATOUR MAGZANYAN,

4                        (15) TIGRAN SARKISYAN,

5                    (16) HRIPSIME KHACHTRYAN,

6                           (17) LOUI ARTIN,

7                       (18) HUGO MARQUEZ,

8                      (19) ARMAN ZARGARYAN,

9                    (20) DMITRIY KUSTOV, and

10                      (21) DAVID MILLER

11  and others known and unknown, being persons employed by and associated with the enterprise

12  described above, namely, the Karapedyan-Stepanyan Enterprise, which enterprise was engaged in, and

13  the activities of which affected, interstate and foreign commerce, unlawfully and knowingly combined,

14  conspired, confederated, and agreed together and with each other to conduct and participate, directly and

15  indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, which

16  pattern of racketeering consisted of:

17          a.      multiple acts and threats involving murder under Sections 187, 189, 182, 21a,

18  664, 653f(b), and 31 of the California Penal Code; and

19          b.      multiple acts indictable under Title 18, United States Code, Sections 1028, 1029,

20  1341, 1343, 1344, 1956, 1957, and 1958.

21       31.      It was part of the conspiracy that each defendant agreed that a conspirator would commit

22  at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

23       All in violation of Title 18, United States Code, Section 1962(d).

24  <u>COUNT TWO</u>:  (18 U.S.C. § 1028(f) – Conspiracy to Commit Identity Theft)

25       32.      Paragraphs 1 through 29 of this Indictment are realleged, repeated, and incorporated by

26  reference as though fully set forth herein.

27       33.      From at least in or about 2009, through and including the date of this Indictment, in the

28  Northern District of California and elsewhere, the defendants,

1       (1) ARA KARAPEDYAN,

2      (2) MIHRAN STEPANYAN,

3      (3) ARTUR STEPANYAN,

4    (4) GEVORK TER-MKRTCHYAN,

5     (5) KHACHIG GEUYDJIAN,

6     (6) ARMAN PETROSYAN,

7     (7) LANNA KARAPEDYAN,

8     (8) MAXWELL STARSKY,

9     (9) SEVAK GHARGHANI,

10     (10) JEAN DUKMAJIAN,

11    (11) KARINE DUKMAJIAN,

12    (12) ANGELA DUKMAJIAN,

13    (13) ARMAN DANIELIAN,

14   (14) ASATOUR MAGZANYAN,

15    (15) TIGRAN SARKISYAN,

16   (16) HRIPSIME KHACHTRYAN,

17     (17) LOUI ARTIN,

18     (18) HUGO MARQUEZ,

19    (19) ARMAN ZARGARYAN,

20   (20) DMITRIY KUSTOV, and

21     (21) DAVID MILLER,

22 conspired together and with one another to violate Title 18, United States Code, Section 1028(a)(3), (4),

23 and (7).

24   34.  It was a part and an object of the conspiracy that the defendants named in paragraph 33 of

25 this Indictment, and others known and unknown to the Grand Jury, would and did possess with intent to

26 use unlawfully five and more identification documents other than ones issued lawfully for the use of the

27 possessor, authentication features, and false identification documents, affecting interstate and foreign

28 commerce, in violation of Title 18, United States Code, Section 1028(a)(3).

INDICTMENT       14

35.     It was further a part and an object of the conspiracy that the defendants named in paragraph 33 of this Indictment, and others known and unknown to the Grand Jury, would and did, possess an identification document other than ones issued lawfully for the use of the possessor, authentication feature, and false identification document, with the intent such document and feature be used to defraud the United States, in violation of Title 18, United States Code, Section 1028(a)(4).

36.     It was further a part and an object of the conspiracy that the defendants named in paragraph 33 of this Indictment, and others known and unknown to the Grand Jury, would and did, transfer, possess, and use, without lawful authority, a means of identification of another person with the intent to commit, and to aid and abet, and in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State and local law, affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1028(a)(7).

All in violation of Title 18, United States Code, Section 1028(f).

COUNT THREE:  (18 U.S.C. § 1029(b)(2) – Conspiracy to Commit Access Device Fraud)

37.     Paragraphs 1 through 29 of this Indictment are realleged, repeated, and incorporated by reference as though fully set forth herein.

38.     From at least in or about 2009, through and including the date of this Indictment, in the Northern District of California and elsewhere, the defendants,

(1) ARA KARAPEDYAN,

(2) MIHRAN STEPANYAN,

(3) ARTUR STEPANYAN,

(4) GEVORK TER-MKRTCHYAN,

(5) KHACHIG GEUYDJIAN,

(6) ARMAN PETROSYAN,

(7) LANNA KARAPEDYAN,

(8) MAXWELL STARSKY,

(9) SEVAK GHARGHANI,

(10) JEAN DUKMAJIAN,

(11) KARINE DUKMAJIAN,

INDICTMENT                                15

1
2
3
4
5
6
7
8
9
10

(12) ANGELA DUKMAJIAN,

(13) ARMAN DANIELIAN,

(14) ASATOUR MAGZANYAN,

(15) TIGRAN SARKISYAN,

(16) HRIPSIME KHACHTRYAN,

(17) LOUI ARTIN,

(18) HUGO MARQUEZ,

(19) ARMAN ZARGARYAN,

(20) DMITRIY KUSTOV, and

(21) DAVID MILLER,

conspired together and with one another to violate Title 18, United States Code, Section 1029(a)(1), (2), (3) and (5).

39.    It was a part and an object of the conspiracy that the defendants named in paragraph 38 of this Indictment, and others known and unknown to the Grand Jury, with intent to defraud, would and did use one and more counterfeit access devices, affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1029(a)(1).

40.    It was further a part and an object of the conspiracy that the defendants named in paragraph 38 of this Indictment, and others known and unknown to the Grand Jury, with intent to defraud, would and did use one and more unauthorized access devices during a one-year period, and by such conduct, obtained anything of value aggregating $1,000 and more during that period, affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1029(a)(2).

41.    It was further a part and an object of the conspiracy that the defendants named in paragraph 38 of this Indictment, and others known and unknown to the Grand Jury, with intent to defraud, would and did possess fifteen and more devices which were counterfeit and unauthorized access devices, affecting interstate and foreign commerce, in violation of Title 18, United States Code, 1029(a)(3).

42.    It was further a part and an object of the conspiracy that the defendants named in paragraph 38 of this Indictment, and others known and unknown to the Grand Jury, with intent to

1   defraud, would and did effect transactions, with 1 and more access devices issued to another person, to

2   receive payment and any other thing of value during any 1-year period the aggregate value of which was

3   equal to and greater than $1,000, affecting interstate and foreign commerce, in violation of Title 18,

4   United States Code, Section 1029(a)(5).

5                                   Overt Acts

6          43.     In furtherance of the conspiracy, and to effect the illegal objects thereof, the following

7   overt acts, among others, were committed in the Northern District of California:

8          a.      On or about October 17, 2012, SEVAK GHARGHANI delivered checks to the

9   Northern District of California.

10         b.      On or about September 12, 2013, ARA KARAPEDYAN picked up cash and

11   delivered checks in the Northern District of California.

12         c.      On or about October 15, 2013, ARA KARAPEDYAN picked up cash and

13   delivered checks in the Northern District of California.

14         d.      On or about October 22, 2013, ARA KARAPEDYAN picked up cash and

15   delivered a check in the Northern District of California.

16         e.      On or about November 26, 2013, ARMAN PATROYSAN and LANNA

17   KARAPEDYAN picked up cash in the Northern District of California.

18         f.      On or about November 26, 2013, LANNA KARAPEDYAN called ARA

19   KARAPEDYAN from the Northern District of California.

20         g.      On or about December 20, 2013, ARA KARAPEDYAN picked up cash and

21   delivered checks in the Northern District of California.

22         h.      On or about November 24, 2014, ARA KARAPEDYAN picked up cash and

23   delivered checks in the Northern District of California.

24         All in violation of Title 18, United States Code, Section 1029(b)(2).

25   COUNT FOUR:  (18 U.S.C. § 1349 – Conspiracy to Commit Mail, Wire, and Bank Fraud)

26         44.     Paragraphs 1 through 29 of this Indictment are realleged, repeated, and incorporated by

27   reference as though fully set forth herein.

28         45.     From at least in or about 2009, through and including the date of this Indictment, in the

INDICTMENT                                    17

1 Northern District of California and elsewhere, the defendants,

2                                      (1) ARA KARAPEDYAN,

3                                    (2) MIHRAN STEPANYAN,

4                                     (3) ARTUR STEPANYAN,

5                               (4) GEVORK TER-MKRTCHYAN,

6                                    (5) KHACHIG GEUYDJIAN,

7                                     (6) ARMAN PETROSYAN,

8                                    (7) LANNA KARAPEDYAN,

9                                     (8) MAXWELL STARSKY,

10                                    (9) SEVAK GHARGHANI,

11                                    (10) JEAN DUKMAJIAN,

12                                   (11) KARINE DUKMAJIAN,

13                                   (12) ANGELA DUKMAJIAN,

14                                    (13) ARMAN DANIELIAN,

15                                   (14) ASATOUR MAGZANYAN,

16                                    (15) TIGRAN SARKISYAN,

17                               (16) HRIPSIME KHACHTRYAN,

18                                        (17) LOUI ARTIN,

19                                      (18) HUGO MARQUEZ,

20                                   (19) ARMAN ZARGARYAN,

21                                    (20) DMITRIY KUSTOV,

22                                    (21) MICHAEL INMAN,

23                                   (22) ARAXIA NAZARYIAN,

24                                 (23) ALEXANDER SOLIMAN,

25                                    (24) CHERYL BARNDT,

26                                    (25) ERIC FIGUEROA,

27                                   (26) MARC ASHEGHIAN,

28                                 (27) MICHAEL ASHEGHIAN,

INDICTMENT                                    18

(28) DAVID MILLER,

(29) JAMES RUSSO,

(30) JEANNETTE COUCH,

(31) MARIE POLICHETTI,

(32) BERNARDO GUILLEN, and

(33) JAVIER RAMIREZ,

conspired together and with one another to violate Title 18, United States Code, Sections 1341, 1343, and 1344.

46.     It was a part and an object of the conspiracy that the defendants named in paragraph 45 of this Indictment, and others known and unknown to the Grand Jury, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice would and did place in a post office and authorized depository for mail matter, a matter and thing whatever to be sent and delivered by the Postal Service and a private and commercial interstate carrier, and take and receive therefrom, a matter and thing, and knowingly cause to be delivered by mail and such carrier according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, a matter and thing, in violation of Title 18, United States Code, Section 1341.

47.     It was further a part and an object of the conspiracy that the defendants named in paragraph 45 of this Indictment, and others known and unknown to the Grand Jury, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

48.     It was further a part and an object of the conspiracy that the defendants named in paragraph 45 of this Indictment, and others known and unknown to the Grand Jury, would and did execute a scheme and artifice to defraud a financial institution and to obtain the moneys, funds, credits,

1 | assets, securities and other property owned by, and under the custody and control of, a financial
2 | institution, by means of false and fraudulent pretenses, representations, and promises, in violation of
3 | Title 18, United States Code, Section 1344.

4 |     All in violation of Title 18, United States Code, Section 1349.

5 | COUNT FIVE:  (18 U.S.C. § 1956(h) – Money Laundering Conspiracy)

6 |     49.    Paragraphs 1 through 29 of this Indictment are realleged, repeated, and incorporated by
7 | reference as though fully set forth herein.

8 |     50.    From at least in or about 2009, through and including the date of this Indictment, in the
9 | Northern District of California and elsewhere, the defendants,

10 | (1) ARA KARAPEDYAN,
11 | (2) MIHRAN STEPANYAN,
12 | (3) ARTUR STEPANYAN,
13 | (4) GEVORK TER-MKRTCHYAN,
14 | (5) KHACHIG GEUYDJIAN,
15 | (6) ARMAN PETROSYAN,
16 | (7) LANNA KARAPEDYAN,
17 | (8) MAXWELL STARSKY,
18 | (9) SEVAK GHARGHANI,
19 | (10) JEAN DUKMAJIAN,
20 | (11) KARINE DUKMAJIAN,
21 | (12) ANGELA DUKMAJIAN,
22 | (13) ARMAN DANIELIAN,
23 | (14) ASATOUR MAGZANYAN,
24 | (15) TIGRAN SARKISYAN,
25 | (16) HRIPSIME KHACHTRYAN,
26 | (17) LOUI ARTIN,
27 | (18) HUGO MARQUEZ,
28 | (19) ARMAN ZARGARYAN,

1                     (20) DMITRIY KUSTOV,

2                     (21) ARAXIA NAZARYIAN,

3                     (22) ALEXANDER SOLIMAN,

4                     (23) CHERYL BARNDT,

5                     (24) MARC ASHEGHIAN,

6                     (25) MICHAEL ASHEGHIAN,

7                     (26) DAVID MILLER,

8                     (27) JAMES RUSSO,

9                     (28) JEANNETTE COUCH, and

10                     (29) MARIE POLICHETTI,

11 conspired together and with one another to violate Title 18, United States Code, Section 1956(a)(1).

12        51.    It was a part and an object of the conspiracy that the defendants named in paragraph 50 of

13 this Indictment, and others known and unknown to the Grand Jury, with the intent to promote the

14 carrying on of specified unlawful activity and to conceal and disguise the nature, location, source,

15 ownership, and control of the proceeds of specified unlawful activity, to wit, conspiracy to commit

16 identity theft, in violation of Title 18, United States Code, Section 1028(f), conspiracy to commit access

17 device fraud, in violation of Title 18, United States Code, Section 1029(b)(2), and conspiracy to commit

18 mail, wire, and bank fraud, in violation of Title 18, United States Code, Section 1349, and knowing that

19 property involved in a financial transaction represents the proceeds of some form of unlawful activity,

20 would and did conduct and attempt to conduct a financial transaction which in fact involved the

21 proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1).

22        All in violation of Title 18, United States Code, Section 1956(h).

23 COUNT SIX:  (18 U.S.C. § 1958 –Conspiracy to Use Interstate Facility to Commit Murder-for-Hire)

24        52.    Paragraphs 1 through 29 of this Indictment are realleged, repeated, and incorporated by

25 reference as though fully set forth herein.

26        53.    From at least in or about August 2014, through and including in or about November

27 2014, in the Northern District of California and elsewhere, the defendants,

28 //

INDICTMENT                    21

ARA KARAPEDYAN and

GEVORK TER-MKRTCHYAN,

conspired together and with one another to violate Title 18, United States Code, Section 1958.

54.    It was a part and an object of the conspiracy that the defendants named in paragraph 53 of this Indictment, and others known and unknown to the Grand Jury, would and did cause another to travel in interstate and foreign commerce, and use and cause another to use the mail and any facility of interstate and foreign commerce, with intent that a murder be committed in violation of the laws of a State and the United States as consideration for the receipt of, or as consideration for a promise and agreement to pay, anything of pecuniary value, in violation of Title 18, United States Code, Section 1958.

All in violation of Title 18, United States Code, Section 1958.

COUNT SEVEN:  (18 U.S.C. § 371 – Conspiracy to Engage in the Unlicensed Wholesale Distribution of Drugs)

55.    Paragraphs 1 through 29 of this Indictment are realleged, repeated, and incorporated by reference as though fully set forth herein.

56.    From at least in or about 2009, through and including the date of this Indictment, in the Northern District of California and elsewhere, the defendants,

(1) ARA KARAPEDYAN,

(2) MIHRAN STEPANYAN,

(3) ARTUR STEPANYAN,

(4) GEVORK TER-MKRTCHYAN,

(5) MAXWELL STARSKY,

(6) SEVAK GHARGHANI,

(7) ARMAN DANIELIAN,

(8) HUGO MARQUEZ,

(9) ARMAN ZARGARYAN,

(10) ARAXIA NAZARYIAN,

(11) ALEXANDER SOLIMAN,

1                   (12) CHERYL BARNDT,

2                   (13) ERIC FIGUEROA,

3                   (14) MARC ASHEGHIAN,

4                   (15) MICHAEL ASHEGHIAN,

5                   (16) DAVID MILLER,

6                   (17) JAMES RUSSO,

7                   (18) JEANNETTE COUCH,

8                   (19) MARIE POLICHETTI,

9                 (20) BERNARDO GUILLEN, and

10                   (21) JAVIER RAMIREZ,

11 conspired together and with one another to violate Title 21, United States Code, Sections 331(t),

12 353(e)(2)(A), and 333(b)(1)(D).

13       57.    It was a part and an object of the conspiracy that the defendants named in paragraph 56 of

14 this Indictment, and others known and unknown to the Grand Jury, would and did engage in the

15 unlicensed wholesale distribution of drugs in interstate commerce, in violation of Title 21, United States

16 Code, Sections 331(t), 353(e)(2)(A), and 333(b)(1)(D).

17                                   Overt Acts

18       58.    In furtherance of the conspiracy, and to effect the illegal object thereof, the following

19 overt acts, among others, were committed in the Northern District of California:

20           a.     In or about March 2011, a co-conspirator not named as a defendant herein

21 established a post office box address in the Northern District of California.

22           b.     In or about August 2013, DAVID MILLER spoke over the telephone with an

23 employee of an Internet Service Provider located in the Northern District of California.

24           c.     On or about August 16, 2013, ARA KARAPEDYAN picked up cash in the

25 Northern District of California.

26           d.     On or about September 6, 2013, ARA KARAPEDYAN picked up cash in the

27 Northern District of California.

28           e.     On or about September 26, 2013, ARA KARAPEDYAN picked up cash in the

1   Northern District of California.

2           f.     On or about October 22, 2013, ARA KARAPEDYAN picked up cash in the

3   Northern District of California.

4           g.     On or about November 12, 2013, ARA KARAPEDYAN picked up cash in the

5   Northern District of California.

6           h.     On or about December 31, 2013, ARA KARAPEDYAN picked up cash in the

7   Northern District of California.

8           i.     On or about November 9, 2014, MAXWELL STARSKY sent an e-mail to a

9   recipient in the Northern District of California.

10          j.     On or about January 8, 2015, SEVAK GHARGHANI delivered drugs to the

11  Northern District of California.

12       All in violation of Title 18, United States Code, Section 371.

13  FORFEITURE ALLEGATIONS:  (18 U.S.C. § 1963; 18 U.S.C. §§ 982(a)(1)(A), 981(a)(1)(C),

14  982(a)(2)(B), 982(a)(7), 1028(b), 1029(c); 21 U.S.C. §§ 853(a)(1) & (2); and 28 U.S.C. § 2461(c))

15       59.    Count One of this Indictment is realleged, repeated, and incorporated by reference as

16  though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18,

17  United States Code, Section 1963.

18       60.    Upon conviction of the offense alleged in Count One, the defendants,

19                    (1) ARA KARAPEDYAN,

20                    (2) MIHRAN STEPANYAN,

21                    (3) ARTUR STEPANYAN,

22                 (4) GEVORK TER-MKRTCHYAN,

23                  (5) KHACHIG GEUYDJIAN,

24                   (6) ARMAN PETROSYAN,

25                    (7) LANNA  ARAPEDYAN,

26                   (8) MAXWELL STARSKY,

27                   (9) SEVAK GHARGHANI,

28                  (10) JEAN DUKMAJIAN,

(11) KARINE DUKMAJIAN,

(12) ANGELA DUKMAJIAN,

(13) ARMAN DANIELIAN,

(14) ASATOUR MAGZANYAN,

(15) TIGRAN SARKISYAN,

(16) HRIPSIME KHACHTRYAN,

(17) LOUI ARTIN,

(18) HUGO MARQUEZ,

(19) ARMAN ZARGARYAN,

(20) DMITRIY KUSTOV, and

(21) DAVID MILLER

shall, pursuant to Title 18, United States Code, Section 1963, forfeit to the United States of America:

a.     Any interest acquired and maintained in violation of section 1962;

b.     Any interest in, security of, claim against, and property and contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of section 1962; and

c.     Any property constituting, and derived from, any proceeds obtained, directly and indirectly, from racketeering activity and unlawful debt collection in violation of 1962.

61.     Counts Two and Three of this Indictment are realleged, repeated, and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982(a)(2)(B), 1028(b), and 1029(c)(1)(C).

62.     Upon conviction of any of the offenses alleged in Counts Two and Three of this Indictment, defendants,

(1) ARA KARAPEDYAN,

(2) MIHRAN STEPANYAN,

(3) ARTUR STEPANYAN,

(4) GEVORK TER-MKRTCHYAN,

(5) KHACHIG GEUYDJIAN,

1        (6) ARMAN PETROSYAN,

2        (7) LANNA KARAPEDYAN,

3        (8) MAXWELL STARSKY,

4        (9) SEVAK GHARGHANI,

5        (10) JEAN DUKMAJIAN,

6        (11) KARINE DUKMAJIAN,

7        (12) ANGELA DUKMAJIAN,

8        (13) ARMAN DANIELIAN,

9        (14) ASATOUR MAGZANYAN,

10        (15) TIGRAN SARKISYAN,

11        (16) HRIPSIME KHACHTRYAN,

12        (17) LOUI ARTIN,

13        (18) HUGO MARQUEZ,

14        (19) ARMAN ZARGARYAN,

15        (20) DMITRIY KUSTOV, and

16        (21) DAVID MILLER,

17    shall forfeit to the United States all property constituting and derived from or traceable to any proceeds

18    the defendant obtained, directly or indirectly, as a result of said violations, any conveyance, including

19    any vessel, vehicle, or aircraft used in the commission of the offense of which the person is convicted,

20    and any property, real or personal, that is used to facilitate, or is intended to be used to facilitate, the

21    commission of the offense.

22        63.    Counts Four and Six of this Indictment are realleged, repeated, and incorporated by

23    reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions

24    of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

25        64.    Upon conviction of any of the offenses alleged in Counts Four and Six of this Indictment,

26    the defendants,

27        (1) ARA KARAPEDYAN,

28        (2) MIHRAN STEPANYAN,

1    (3) ARTUR STEPANYAN,

2    (4) GEVORK TER-MKRTCHYAN,

3    (5) KHACHIG GEUYDJIAN,

4    (6) ARMAN PETROSYAN,

5    (7) LANNA KARAPEDYAN,

6    (8) MAXWELL STARSKY,

7    (9) SEVAK GHARGHANI,

8    (10) JEAN DUKMAJIAN,

9    (11) KARINE DUKMAJIAN,

10   (12) ANGELA DUKMAJIAN,

11   (13) ARMAN DANIELIAN,

12   (14) ASATOUR MAGZANYAN,

13   (15) TIGRAN SARKISYAN,

14   (16) HRIPSIME KHACHTRYAN,

15   (17) LOUI ARTIN,

16   (18) HUGO MARQUEZ,

17   (19) ARMAN ZARGARYAN,

18   (20) DMITRIY KUSTOV,

19   (21) MICHAEL INMAN,

20   (22) ARAXIA NAZARYIAN,

21   (23) ALEXANDER SOLIMAN,

22   (24) CHERYL BARNDT,

23   (25) ERIC FIGUEROA,

24   (26) MARC ASHEGHIAN,

25   (27) MICHAEL ASHEGHIAN,

26   (28) DAVID MILLER,

27   (29) JAMES RUSSO,

28   (30) JEANNETTE COUCH,

INDICTMENT                          27

1                       (31) MARIE POLICHETTI,

2                    (32) BERNARDO GUILLEN, and

3                      (33) JAVIER RAMIREZ,

4 shall, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), forfeit to the United States any

5 property, real or personal, which constitutes or is derived from proceeds traceable to said offense, or a

6 conspiracy to commit said offense, including but not limited to:

7           a.      approximately $3,017,888.30 seized from Bank of Manhattan account number

8 208948807, held in the name of Sky Atlantic Capital Group, Inc. on or about 24-Feb-15;

9           b.      approximately $7,983,151.78 seized from Bank of Manhattan account number

10 285126789 held in the name of Sky Atlantic Capital Group, Inc. on or about 24-Feb-15;

11           c.      approximately $1,926,579.42 seized from Associated Bank account number

12 2283283550 held in the name of Minnesota Independent Cooperative, Inc. on or about 25-Feb-15;

13           d.      approximately $340,645.48 seized from Merchant Bank account number

14 70050342 held in the name of Minnesota Independent Cooperative, Inc. on or about 27-Feb-15;

15           e.      approximately $716,539.66 seized from Citibank account number 205851595

16 held in the name of Nationwide Payment Solutions, Inc. on or about 12-Mar-15;

17           f.      approximately $2,362.80 seized from Citibank account number 205851587 held

18 in the name of Nationwide Payment Solutions, Inc. on or about 12-Mar-15;

19           g.      approximately $1,910.00 seized from Citibank account number 205851280 held

20 in the name of Westprime Systems Inc. on or about 12-Mar-15;

21           h.      approximately $8,839.18 seized from Citibank account number 205851298 held

22 in the name of Westprime Systems Inc. on or about 12-Mar-15;

23           i.      approximately $4,934,463.32 held to settle the un-negotiated cashier's check

24 number 254492 made payable to Sky Atlantic Capital Group, Inc., and originally funded by Comerica

25 Bank account number 1894966892, held in the name of Sky Atlantic seized on or about 4-Mar-15;

26           j.      approximately $1,241,680.82 from Comerica Bank held to settle the un-

27 negotiated cashier's check number 254491 made payable to Sky Atlantic Capital Group, Inc., and

28 originally funded by Comerica Bank account number 1894966884, held in the name of Sky Atlantic

seized on or about 4-Mar-15;

        k.     approximately $451,741.61 seized from Banco Santander account no. 3004892983, held in the name of FMC Distributors, Inc. on or about 5-Mar-15.

    65.    Count Five of this Indictment is realleged, repeated, and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

    66.    Upon conviction of the offense alleged in Count Five of this Indictment, the defendants,

(1) ARA KARAPEDYAN,

(2) MIHRAN STEPANYAN,

(3) ARTUR STEPANYAN,

(4) GEVORK TER-MKRTCHYAN,

(5) KHACHIG GEUYDJIAN,

(6) ARMAN PETROSYAN,

(7) LANNA KARAPEDYAN,

(8) MAXWELL STARSKY,

(9) SEVAK GHARGHANI,

(10) JEAN DUKMAJIAN,

(11) KARINE DUKMAJIAN,

(12) ANGELA DUKMAJIAN,

(13) ARMAN DANIELIAN,

(14) ASATOUR MAGZANYAN,

(15) TIGRAN SARKISYAN,

(16) HRIPSIME KHACHTRYAN,

(17) LOUI ARTIN,

(18) HUGO MARQUEZ,

(19) ARMAN ZARGARYAN,

(20) DMITRIY KUSTOV,

(21) ARAXIA NAZARYIAN,

INDICTMENT                     29

1      (22) ALEXANDER SOLIMAN,

2      (23) CHERYL BARNDT,

3      (24) MARC ASHEGHIAN,

4      (25) MICHAEL ASHEGHIAN,

5      (26) DAVID MILLER,

6      (27) JAMES RUSSO,

7      (28) JEANNETTE COUCH, and

8      (29) MARIE POLICHETTI,

9  shall, pursuant to 18 U.S.C. § 982(a)(1), forfeit to the United States any property, real and personal,

10 involved in said violations, and any property traceable to such property including, but not limited to the

11 following:

12      a.      approximately $3,017,888.30 seized from Bank of Manhattan account number

13 208948807, held in the name of Sky Atlantic Capital Group, Inc. on or about 24-Feb-15;

14      b.      approximately $7,983,151.78 seized from Bank of Manhattan account number

15 285126789 held in the name of Sky Atlantic Capital Group, Inc. on or about 24-Feb-15;

16      c.      approximately $1,926,579.42 seized from Associated Bank account number

17 2283283550 held in the name of Minnesota Independent Cooperative, Inc. on or about 25-Feb-15;

18      d.      approximately $340,645.48 seized from Merchant Bank account number

19 70050342 held in the name of Minnesota Independent Cooperative, Inc. on or about 27-Feb-15;

20      e.      approximately $716,539.66 seized from Citibank account number 205851595

21 held in the name of Nationwide Payment Solutions, Inc. on or about 12-Mar-15;

22      f.      approximately $2,362.80 seized from Citibank account number 205851587 held

23 in the name of Nationwide Payment Solutions, Inc. on or about 12-Mar-15;

24      g.      approximately $1,910.00 seized from Citibank account number 205851280 held

25 in the name of Westprime Systems Inc. on or about 12-Mar-15;

26      h.      approximately $8,839.18 seized from Citibank account number 205851298 held

27 in the name of Westprime Systems Inc. on or about 12-Mar-15;

28      i.      approximately $4,934,463.32 held to settle the un-negotiated cashier's check

number 254492 made payable to Sky Atlantic Capital Group, Inc., and originally funded by Comerica Bank account number 1894966892, held in the name of Sky Atlantic seized on or about 4-Mar-15;

       j.     approximately $1,241,680.82 from Comerica Bank held to settle the un-negotiated cashier's check number 254491 made payable to Sky Atlantic Capital Group, Inc., and originally funded by Comerica Bank account number 1894966884, held in the name of Sky Atlantic seized on or about 4-Mar-15;

       k.     approximately $451,741.61 seized from Banco Santander account no. 3004892983, held in the name of FMC Distributors, Inc. on or about 5-Mar-15.

67.    Count Seven of this Indictment is realleged, repeated, and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982(a)(7) and Title 21, United States Code, Section 853.

68.    Upon conviction of the offense alleged in Count Seven of this Indictment, the defendants,

(1) ARA KARAPEDYAN,

(2) MIHRAN STEPANYAN,

(3) ARTUR STEPANYAN,

(4) GEVORK TER-MKRTCHYAN,

(5) MAXWELL STARSKY,

(6) SEVAK GHARGHANI,

(7) ARMAN DANIELIAN,

(8) HUGO MARQUEZ,

(9) ARMAN ZARGARYAN,

(10) ARAXIA NAZARYIAN,

(11) ALEXANDER SOLIMAN,

(12) CHERYL BARNDT,

(13) ERIC FIGUEROA,

(14) MARC ASHEGHIAN,

(15) MICHAEL ASHEGHIAN,

(16) DAVID MILLER,

(17) JAMES RUSSO,

(18) JEANNETTE COUCH,

(19) MARIE POLICHETTI,

(20) BERNARDO GUILLEN, and

(21) JAVIER RAMIREZ,

shall, pursuant to 21 U.S.C. § 853(a)(1) and (2), forfeit to the United States all right, title, and interest in property constituting and derived from any proceeds defendants obtained, directly or indirectly, as a result of said violations, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations, or any property traceable to such property, including but not limited to:

        a.     approximately $3,017,888.30 seized from Bank of Manhattan account number 208948807, held in the name of Sky Atlantic Capital Group, Inc. on or about 24-Feb-15;

        b.     approximately $7,983,151.78 seized from Bank of Manhattan account number 285126789 held in the name of Sky Atlantic Capital Group, Inc. on or about 24-Feb-15;

        c.     approximately $1,926,579.42 seized from Associated Bank account number 2283283550 held in the name of Minnesota Independent Cooperative, Inc. on or about 25-Feb-15;

        d.     approximately $340,645.48 seized from Merchant Bank account number 70050342 held in the name of Minnesota Independent Cooperative, Inc. on or about 27-Feb-15;

        e.     approximately $716,539.66 seized from Citibank account number 205851595 held in the name of Nationwide Payment Solutions, Inc. on or about 12-Mar-15;

        f.     approximately $2,362.80 seized from Citibank account number 205851587 held in the name of Nationwide Payment Solutions, Inc. on or about 12-Mar-15;

        g.     approximately $1,910.00 seized from Citibank account number 205851280 held in the name of Westprime Systems Inc. on or about 12-Mar-15;

        h.     approximately $8,839.18 seized from Citibank account number 205851298 held in the name of Westprime Systems Inc. on or about 12-Mar-15;

        i.     approximately $4,934,463.32 held to settle the un-negotiated cashier's check number 254492 made payable to Sky Atlantic Capital Group, Inc., and originally funded by Comerica

Bank account number 1894966892, held in the name of Sky Atlantic seized on or about 4-Mar-15;

        j.      approximately $1,241,680.82 from Comerica Bank held to settle the un-negotiated cashier's check number 254491 made payable to Sky Atlantic Capital Group, Inc., and originally funded by Comerica Bank account number 1894966884, held in the name of Sky Atlantic seized on or about 4-Mar-15;

        k.      approximately $451,741.61 seized from Banco Santander account no. 3004892983, held in the name of FMC Distributors, Inc. on or about 5-Mar-15.

All in violation of Title 18, United States Code, Sections 981(a)(1)(A), 981(a)(1)(C), 982(a)(1), 982(a)(7), and 1963; Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED:                               A TRUE BILL.

4/28/15

                                            _____
                                            FOREPERSON

MELINDA HAAG
United States Attorney

DAVID R. CALLAWAY
Chief, Criminal Division

(Approved as to form: _____)
                                W.S. WILSON LEUNG
                                DAMALI A. TAYLOR
                                DAVID B. COUNTRYMAN
                                Assistant United States Attorneys